# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CFGI, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N23C-03-032 MAA CCLD |
| | ) |
| COMMON C HOLDINGS LP | ) |
| (d/b/a COMMON CITIZEN) and | ) |
| COMMON C GP LLC, | ) |
| | ) |
| Defendants. | ) |

Submitted: August 25, 2025
Decided: October 30, 2025

## POST-TRIAL MEMORANDUM OPINION

Alexandra M. Cumings, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, and Kevin P. Polansky, Esquire (Argued), of NELSON MULLINS RILEY & SCARBOROUGH LLP, *Attorneys for Plaintiff*.

R. Grant Dick IV, Esquire (Argued), and Dean R. Roland, Esquire, of COOCH AND TAYLOR P.A., Wilmington, Delaware, *Attorneys for Defendants*.

**Adams, J.**

0

# INTRODUCTION

This post-trial opinion concerns a dispute between an accounting-consulting firm, CFGI, LLC ("CFGI") and Common C Holdings LP ("Common LP") and Common C GP LLC ("Common GP," with Common LP, "Common"). CFGI alleges Common wrongfully failed to pay invoices for work done pursuant to a consulting agreement (the "Agreement"). The Court previously granted summary judgment in favor of CFGI regarding Common's breach of the Agreement. Trial, therefore, focused on two remaining issues: (1) the validity of CFGI's invoices and (2) which common entities are responsible for damages arising out of the breach.

For the reasons discussed herein, the Court largely rejects Common's arguments regarding the unpaid invoices and enters judgment in the amount of $2,160,033.50 in favor of CFGI. The Court, however, finds only Common LP is liable for breach of the Agreement.

# BACKGROUND[1]

## A. The Parties

CFGI is a Delaware limited liability company headquartered in Boston, Massachusetts.[2] CFGI is a "financial consulting and accounting advisory firm," not a certified public accountant ("CPA") firm.[3]

Common LP is a Delaware limited partnership.[4] Common GP is a Michigan limited liability company.[5] Common is involved in the cannabis industry.[6]

## B. Key witnesses

Judy-Ann Thompson ("J. Thompson") is a partner at CFGI.[7] J. Thompson worked as the managing director for the Common project (the "Project").[8] Benjamin Martin was a CFGI employee and testified as CFGI's Rule 30(b)(6) witness.[9] Martin did not testify at trial, but the Parties lodged his deposition.[10] Miles Liscum was a

---

[1] These facts were stipulated to by the Parties or found by a preponderance of the evidence at trial held on February 13 and 14, 2025. *See* Docket Item ["D.I."] 121 ["Pretrial Stip."]; D.I. 125. The Court gives the evidence the weight and credibility it deserves. Citations to the trial and post-trial argument transcripts are in the form "X Tr. #," with "X" representing the day of trial. D.Is. 128–29, 139. The joint trial exhibits are cited as "JX #." The lodged depositions are cited as "Last Name Dep."

[2] Pretrial Stip. at 8.

[3] D.I. 32 ["CFGI Opening Br."] at 3; Feb. 14 Tr. 167:3–6

[4] Pretrial Stip. at 8.

[5] *Id.*

[6] Feb. 14 Tr. 7:16–8:3.

[7] Feb. 13 Tr. 14:11.

[8] *Id.* at 12:5–7.

[9] Martin Dep. 8:15–18 (JX 126).

[10] D.I. 124. The Court notes that Common relies heavily on the deposition testimony of Martin in its post-trial briefing. Although helpful to the Court, it is difficult for the Court to truly judge the

CFGI employee working on the Project.[11] Liscum did not testify at trial and his deposition is not in the trial record.

David Yostos is a founder of the Common entities.[12] Joseph Jarvis is another founder of Common.[13] Jarvis did not testify at trial and the Parties did not lodge his deposition. Fay DeVriese is the Chief Financial Officer for the Common entities and served as Common's Rule 30(b)(6) witness.[14] Daniel Foley is Common's former Chief Financial Officer.[15] Neither Foley nor DeVriese testified at trial, but the Parties lodged their depositions.[16]

Michael Thompson ("M. Thompson") was CFGI's expert witness at trial, testifying on "the adequacy and reasonableness of CFGI's work and fees [for the Project]."[17] Jeffrey Willoughby was Common's expert witness at trial, testifying on whether CFGI breached its professional duties on the Project.[18]

---

credibility of such an important witness without Martin's appearance at trial. When conflicting, the Court instead relies on the testimony of J. Thompson, who did appear at trial and who handled the Project leading to this dispute.

[11] Feb. 13 Tr. 35:17–36:3.
[12] Feb. 14 Tr. 7:11–13.
[13] *Id.* at 9:18–20.
[14] DeVriese Dep. 2:12–15, 8:8–15 (JX 104).
[15] Foley Dep. 9:23–24 (JX 103).
[16] D.I. 124.
[17] Pretrial Stip. at 18.
[18] *Id.* at 19–20.

## C. Common hired CFGI.

In early 2022, Common sought outside help resolving issues in its accounting department.[19]  Specifically, Common needed assistance reconciling its books and preparing for an audit.[20]  Through Foley, Common's then-CFO, Common contacted CFGI for assistance on this Project.[21]  CFGI quoted the Project's budget as roughly $300k.[22]

CFGI and Common formed the Agreement on April 19, 2022, outlining the Project and services CFGI would provide.[23]  Jarvis signed on behalf of "Common Citizen."[24]  The Agreement does not specify which specific Common entity is a party to its terms, [25]  leaving that question for the Court.  Pursuant to the terms of the Agreement, CFGI would provide monthly invoices for the services it provided.[26]  These invoices were due within 15 days of receipt by Common.[27]

## D. Common expanded the scope of the Project.

Shortly after CFGI commenced the Project, CFGI and Foley realized the problems at Common were greater than previously anticipated.[28]  CFGI and Foley,

---

[19] Foley Dep. 13:20–15:16.
[20] *Id.* at 13:20–15:16.
[21] *Id.* at 16:4–16.
[22] Martin Dep. 71:14–19.
[23] JX 1 ["Agreement"] at 5.
[24] *Id.* at 5; Pretrial Stip. at 9.
[25] *See generally* Agreement.
[26] *Id.* at 2; Pretrial Stip. at 9.
[27] Agreement at 2; Pretrial Stip. at 9.
[28] Foley Dep. 26:21–30:6.

Common's CFO, recommended Common expand the scope of the Project.[29] Common agreed to the expanded scope.[30] Common pressed for an expedited pace, desiring a speedy resolution of the Project.[31] To meet this pacing demand, CFGI increased its staff on the Project.[32]

On May 31, 2022, CFGI sent the first invoice for the Project, totaling $492,804.45.[33] Yostos testified that he was shocked by that bill.[34] Instead of ordering pencils down in light of the increased costs, Common requested an updated budget from CFGI as they continued to complete the Project.[35] CFGI provided an updated overall budget for the Project in August 2022.[36] Throughout the Project, CFGI provided Common with weekly status updates.[37]

Under the expanded scope of the Project, CFGI worked on an accounts payable project with Common's accounts payable manager, inspected the proper accounting categorization for branding costs, and worked on correcting the implementation of an accounting software called Sage Intacct.[38] Regarding this last

---

[29] Feb. 14 Tr. 21:10–24:16; Foley Dep. 33:1–16.
[30] Feb. 14 Tr. 71:15–16, 87:4–18, 91:20–21, 110:20–111:2.
[31] *Id.* at 91:20–92:1 (Yostos: "And I'm not disputing that I asked for more work. We did . . . . And I wanted it done fast because that's just who I am.").
[32] Feb. 13 Tr. 60:3–21.
[33] JX 107.
[34] Feb. 14 Tr. 28:14–17.
[35] JX 18.
[36] JX 137.
[37] JX 207.
[38] Feb. 13 Tr. 28:17–30:23.

task, Liscum produced a memo on August 15, 2022 detailing the problems with the Sage Intacct implementation, criticizing both CFGI and Common's handling of the task.[39]

CFGI continued issuing invoices throughout the summer of 2022.[40]  Despite the accruing mass of accounts payable, Common did not object to any of the invoices before payment came due 15 days after receipt.  Instead, Common praised CFGI's work on the Project.[41]  Common failed to pay off the invoices as they arrived, ultimately incurring a significant debt.[42]

### E. Common and CFGI amend the Agreement.

On September 16, 2022, with significant sums from the invoices still outstanding, Common LP and CFGI formed an amendment to the Agreement (the "Amendment").[43]  The Amendment acknowledged an outstanding balance of $2,156,920 in unpaid invoices.[44]  Common further acknowledged and agreed that the outstanding balance "represents amounts invoiced to [Common] by CFGI for services fully, faithfully and completely provided by CFGI to [Common] under the

---

[39] JX 112.  Because Liscum did not testify at trial or by lodged deposition, the Court does not have testimony discussing the context of his memo and thus gives the memo little weight.
[40] JXs 108, 111, 114.
[41] Feb. 13 Tr. 27:12–17 (J. Thompson testifying that Common did not complain about CFGI's work.); JX 21 at 1 (June 24, 2022 email from Common Citizen's accounting manager, Lisa Hurd, to CFGI expressing, "CFGI team, I can't express how much I thank you for helping us!!!!").
[42] *See* JX 90 (outlining the amount of each invoice unpaid by Common as of February 7, 2023).
[43] JX 61 ["Am."].
[44] Am. at 1.

Agreement.[45]  The Amendment set a payment schedule for the outstanding balance owed to CFGI.[46]

Common failed to keep to the Amendment's payment schedule.[47]  Foley described Common's failure to pay CFGI as resulting from an inability to pay due to limited cash.[48]

## F. Procedural history

CFGI filed its complaint on March 6, 2023, alleging claims for breach of contract, unjust enrichment, and costs and fees under the Agreement for Common's failure to pay CFGI's invoices (the "Complaint").[49]  On May 5, 2023, Common filed an answer and raised counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and attorney's fees, contending CFGI improperly expanded the scope of the Project and produced poor work product.[50]  CFGI filed a motion to dismiss Common's counterclaims on June 12, 2023.[51]  CFGI filed an amended complaint on June 13, 2023, adding promissory

---

[45] *Id.*

[46] *Id.*

[47] *See* JX 90 (outlining the unpaid debt months after the Amendment was signed); Pretrial Stip. at 9 (stipulating, at the time of trial, that Common had "not paid the outstanding $2,160,033.50 as set forth in CFGI's invoices").

[48] Foley Dep. 64:13–24.  CFGI's statement of open invoices shows that Common made some payments but failed to satisfy the total balance of the invoices.  JX 90.

[49] D.I. 1.

[50] D.I. 12.

[51] D.Is. 17–18.

estoppel and fraud causes of action.[52]  On July 12, 2023, Common filed a motion to dismiss CFGI's Amended Complaint.[53]  On January 29, 2025, the Court ruled on the Parties' motions to dismiss, granting each in part and denying each in part.[54]

On September 9, 2024, the Parties filed cross motions for partial summary judgment.[55]  On December 4, 2024, the Court heard oral argument on the motions for partial summary judgment and issued a bench ruling in CFGI's favor, finding Common breached the Agreement, essentially making this a trial on damages.[56]  The Court held a two-day bench trial on January 13–14, 2025.[57]  The Parties filed opening post-trial briefs on April 14, 2025.[58]  The Parties filed answering briefs on May 9, 2025.[59]  The Court heard post-trial oral argument on May 20, 2025.[60]  On August 25, 2025, the Parties provided the Court with the schedule of exhibits admitted at trial.[61]

---

[52] D.I. 19.

[53] D.Is. 25–27.

[54] D.Is. 30, 35–37, 42, 49.

[55] D.Is. 89–90.

[56] Pretrial Stip. at 9–10; D.I. 116.

[57] D.I. 125.

[58] D.Is. 132–133.

[59] D.Is. 135–136

[60] D.I. 138.  The post-trial oral argument transcript, which is integral to this decision, was made available on July 3, 2025. D.I. 139.

[61] D.I. 140.

8

**STANDARD OF REVIEW**

In a bench trial, the judge, as fact-finder,[62] "must assess the credibility of each witness and determine the weight given to the testimony."[63]  To reach a verdict on the issues, the court considers admitted exhibits, the testimony of witnesses, the Parties' arguments, and Delaware law.[64]  The court evaluates witness testimony by considering the witness's knowledge, memory, observation, reasonableness, consistency, biases, demeanor, and any factors affecting credibility.[65]  After reviewing the evidence presented, the court is "free to accept or reject any or all of the sworn testimony."[66]

A party must prove its claims by a preponderance of the evidence, meaning it must show "that something is more likely than not."[67]  "[I]f the evidence presented by the parties during trial is inconsistent, and the opposing weight of the evidence is evenly balanced, then 'the party seeking to present a preponderance of the evidence

---

[62] *See*, *e.g.*, *Shallcross Mortg. Co. v. Ewing*, 2024 WL 3738713 at *1 (Del. Super. Aug. 9, 2024) (citing *Torres v. Bishop*, 2021 WL 6053870, at *4 (Del. Super. Dec. 21, 2021)).

[63] *Williams v. Bay City, Inc.*, 2009 WL 5852851, at *1 (Del. Super. Dec. 23, 2009) (cleaned up).

[64] *Outbox Sys., Inc. v. Trimble, Inc.*, 2024 WL 1886089, at *7 (Del. Super. Apr. 30, 2024).

[65] *Zenith Energy Terminals Joliet Hldgs. LLC v. CenterPoint Props. Tr.*, 2024 WL 3570165, at *3 (Del. Super. July 29, 2024) (citing Super. Ct. Civ. Pattern Jury Instruction 23.9).

[66] *Pardo v. State*, 160 A.3d 1136, 1150 (Del. 2017).

[67] *Feenix Payment Sys., LLC v. Blum*, 2024 WL 2768386, at *10 (Del. Super. May 29, 2024); *Navient Sols., LLC v. BPG Off. P'rs XIII Iron Hill LLC*, 2023 WL 3120644, at *10 (Del. Super. Apr. 27, 2023).

has failed to meet its burden.'"[68]  "All elements of a claim must be proven by a preponderance of the evidence, including the plaintiff's damages."[69]

## ANALYSIS

### A. Only Common C Holdings LP is liable for Breach of Contract.

The elements of breach of contract are (1) a party owed a contractual obligation, (2) breach of that obligation, and (3) damages.[70]  At summary judgment, the Court determined Common breached the Agreement by failing to pay CFGI's invoices.[71]

Only a party to a contract may be held liable for breach.[72]  The Parties agree CFGI and Common LP entered into the Agreement.[73]  Thus, the Court must determine whether CFGI proved by a preponderance of the evidence that non-signatory Common GP is liable under the Agreement.  CFGI contends both Common LP and Common GP are liable for Common's breach, as the Agreement does not

---

[68] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 545 (Del. Super. 2005) (quoting *Eskridge v. Voshell*, 593 A.2d 589 (Del. 1991) (TABLE)).

[69] *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2024 WL 4352368, at *21 (Del. Super. Sept. 30, 2024) (citing *Outbox Sys., Inc. v. Trimble, Inc.*, 2024 WL 1886089, at *14 (Del. Super. Apr. 30, 2024)).

[70] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[71] Pretrial Stip. at 9–10; D.I. 116.

[72] *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002).

[73] Pretrial Stip. at 8 ("On or about April 18, 2022, CFGI and Common C Holdings entered into a written contract (the "Contract") whereby CFGI agreed to provide consulting services to Common C Holdings.").

10

specify to which Common entity the Agreement applies.[74]  Common asserts only Common LP is liable.[75]

The Court first looks to the language of the Agreement.[76]  The Agreement, which is on CFGI letterhead, states, "This letter agreement ('this Agreement') memorializes and confirms our understanding of the terms of engagement of CFGI, LLC ('CFGI', 'we' or 'our') to provide services to Common Citizen (the 'Company')."[77]  The Agreement was signed by Benjamin Martin on behalf of CFGI and by Joseph Jarvis on behalf of Common Citizen.[78]

The Agreement does not identify which Common entity is a signatory to the Agreement.  The record, however, confirms the identity of "Common Citizen." First, as CFGI has recognized since the filing of its Complaint,[79] Common C Holdings LP's trade name is "Common Citizen," indicating that Common LP was

---

[74] CFGI Opening Br. at 22.

[75] D.I. 136 ["Common Answering Br."] at 20.

[76] The Parties, in their post-trial briefing, focused on the trial testimony of the Parties' witnesses regarding their understanding of who each side thought was responsible pursuant to the Agreement.  CFGI Opening Br. at 28; D.I. 133 ["Common Opening Br."] at 8, 14, 20, 28, 31; D.I. 135 ["CFGI Answering Br."] at 12, 20, 31; Common Answering Br. at 21–22, 24.  For example, DeVriese, Common's 30(b)(6) witness, testified that Common Citizen meant "all Common Citizen companies."  DeVriese Dep. 46:14–47:19.  Dan Foley, Common Citizen's former CFO, testified that he did not know which Common Citizen entity the Agreement referred to: "I believe what CFGI was trying to capture was that we were working on the accounting for the entire entity, both the left side and the right side.  So the work would have encompassed all of Common Citizen and its various subsidiaries."  Foley Dep. 23:18–24:7.  Foley further testified that he did not know whether any entity at Common Citizen was referred solely as Common Citizen.  *Id.* at 24:10–18. As discussed in this opinion, this testimony is not as persuasive as CFGI claims.

[77] Agreement at 1.

[78] *Id.* at 5.

[79] D.I. 1.

11

the intended party to the Agreement. Second, the Amendment to the Agreement states it "is delivered with the intent of amendment the terms of the agreement between Common C Holdings LP (the 'Company') and CFGI, LLC ('CFGI') dated April 18, 2022."[80] The Amendment is signed by Joseph Jarvis (as Manager of Common C GP LLC) on behalf of Common C Holdings LP and by Bejamin Martner on behalf of CFGI, LLC.[81] Finally, the Pre-Trial Stipulation recognizes that Common LP (not Common GP) was responsible for the amount owed under the invoices.[82] Thus, the Court finds CFGI has not proven, by a preponderance of the evidence, that Common GP is a party to the Agreement.[83]

In so holding, the Court reviews, and rejects, CFGI's attempts to credit deposition testimony from Fay DeVriese, Common's Rule 30(b)(6) witness:

> Q: [Examining the Agreement], would you agree with me that this agreement governs the relationship between Common Citizen and CFGI?
> A: Yes.
> Q: Would you agree that in the opening sentence of the engagement letter, it doesn't specify which Common Citizen company is contracting with CFGI? . . .

---

[80] Am. at 1.
[81] *Id.* at 3. Although the Court previously held that the Amendment was not a new, binding contract between the Parties due to lack of consideration, *CFGI, LLC v. Common C Hldgs. LP*, 2024 WL 325567, at *6 (Del. Super. Jan. 29, 2024), the Amendment still evidences the contemporaneous intent of the Parties regarding their obligations pursuant to the Agreement.
[82] Pretrial Stip. at 9. This fact was stated in the section titled "FACTS ADMITTED WITHOUT FORMAL PROOF."
[83] The Court further notes that although only Common LP is responsible for damages under the Agreement, when discussing the defenses and counterclaims, the Court will continue to refer to "Common," as both entities raised the same arguments in post-trial briefing.

12

A: From the agreement itself, it doesn't come across. But I would assume that, I mean the option from reading the letter, right, the interpretation would have been CFGI is also serving Common Citizen as a company to provide the services.

Q: And again, that's all Common Citizen companies? . . . Is that right?

A: All entities, yes.[84]

DeVriese further testified that CFGI provided services for Common GP.[85]

CFGI argues this testimony indicates an intent for Common GP to be bound, but other testimony from DeVriese contradicts this understanding. For example, when asked whether Common GP enters into contracts, DeVriese testified "Not that I am aware of."[86] DeVriese further testified, when discussing the Agreement, that Jarvis signed the agreement "on behalf of Common C [LP]."[87]

On this point, CFGI fails to address its unjust enrichment and promissory estoppel arguments regarding Common GP's liability until its answering brief.[88] CFGI's post-trial opening brief only requests $2,160,033.50 in damages for

---

[84] DeVriese Dep. 46:15–47:9.

[85] *Id.* at 44:4–13.

[86] *Id.* at 32:20–22. DeVriese testified throughout her deposition that Jarvis could have been signing on behalf of Common Citizen Servies or some other entity. *Id.* at 47:17–22, 47:15–23. The Court notes that although CFGI relies on Foley's testimony on this point, Foley's testimony is also conflicting when discussing which Common entity signed the Agreement:

> Q. And do you know which Common Citizen entity that referred to? . . .
> [A]: I do not, but generally speaking, I believe what CFGI was trying to capture was that we were working on the accounting for the entire entity, both the left side and the right side. So the work would have encompassed all of Common Citizen and its various subsidiaries.

Foley Dep. 23:24–24:7. When further pressed about whether there was any entity at Common Citizen referred solely as Common Citizen, Foley testified, "I do not know the answer to that question. I believe the answer is yes, but I do not know for sure." *Id.* at 24:14–18.

[87] DeVriese Dep. 41:19–42:5.

[88] CFGI Answer Br. 31–33.

outstanding invoices, and does not request any further relief.[89]  During post-trial

argument, CFGI's counsel only addressed these quasi-contract claims when pressed

by the Court.[90]  Thus, the Court finds CFGI waived its claims for unjust enrichment

and promissory estoppel.[91]

### B. CFGI is entitled to $2,160,033.50 in damages for Common C LP's Breach of Contract.

The elements of breach of contract are (1) a contractual obligation, (2) breach

of that obligation, and (3) damages.[92]  The sole issue remaining is the amount of

damages for Common LP's breach of the Agreement.[93] CFGI contends its damages

equal the outstanding balance of the invoices sent to Common ($2,160,033.50), plus

interest, costs, and attorneys' fees.[94]  Common disputes this figure.[95]

"All elements of a claim must be proven by a preponderance of the evidence,

including the plaintiff's damages."[96]  "The law does not require certainty in the

award of damages where a wrong has been proven and injury established.

---

[89] *See generally* CFGI Opening Br.  This amount corresponds with the outstanding invoice balance as of February 7, 2023.  JX 90.

[90] May 5 Tr. 53:3–54:17.

[91] "Issues not briefed are deemed waived."  *Emerald P'rs v. Berlin¸* 726 A.2d 1215, 1224 (Del. 1999) (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)).

[92] *VLIW Tech., LLC*, 840 A.2d at 612.

[93] Pretrial Stip. at 9–10; D.I. 116.

[94] CFGI Opening Br. at 11, 13.

[95] Common Opening Br. at 18–25.

[96] *Buck*, 2024 WL 4352368, at *21.

Responsible estimates that lack mathematical certainty are permissible so long as the court has a basis to make a responsible estimate of damages."[97]

On February 7, 2023, CFGI provided Common with a chart outlining the outstanding balance of invoices.[98] The Agreement states that payment is due within 15 days of receiving an invoice.[99] Despite this deadline, Common failed to object to the invoices before payment came due.[100]

Common now raises numerous objections to the reliability of CFGI's invoices as a basis for damages, asserting that CFGI (1) cannot prove the invoices accurately reflect the work performed; (2) inadequately executed the Sage Intacct project; (3) is responsible for miscategorizing Common's branding costs; (4) performed subpar work on an accounts payable project; (5) failed to supervise employee billing practices; (6) logged time before completing work, known as "prebilling;" (7) provided vague invoice descriptions; (8) unjustly inflated the Project; and (9) engaged in wasteful and inefficient work, constituting negligence.[101]

[97] *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 466 (Del. Ch. Jan. 21, 2011) (cleaned up).
[98] JX 90.
[99] Agreement at 2.
[100] Feb. 14 Tr. 127:12–14. In the Amendment, Common acknowledged the validity of an "Outstanding Balance" of $2,156,920—a figure very close to the $2,160,033.50 sought by CFGI. Am. at 1.
[101] Common Opening Br. at 19–25.

*1. CFGI's invoices are reliable.*

a. <u>Common admitted the invoices reflect work actually performed</u>.

Common contends CFGI's billing for the Project was inaccurate.[102] Common highlights two circumstances in which CFGI cut time from bills after Common identified an issue with the billing,[103] contending these occasions evidence a possibility that portions of other bills are erroneous.[104] Common thus asks CFGI to prove a negative—that its other bills lack the same errors identified by Common for the two bills in which time was cut. The Court is not persuaded by this speculation. CFGI's two errors, which were discovered after Common objected to bills—an action not taken on other occasions—does not indicate a systemic failure in billing practices.

Evidence at trial demonstrated CFGI performed the work for which it billed Common. After initially breaching the Agreement by failing to pay the invoices, Common signed the Amendment, acknowledging that "[Common] does not dispute any of the services provided under the Agreement and acknowledges and agrees that the Outstanding Balance is due and payable in full."[105] David Yostos, one of Common's founders, testified that when Common signed the Amendment he

---

[102] *Id.* at 19.
[103] *Id.*
[104] *Id.* at 20.
[105] Am. at 1.

16

believed CFGI "did the work, and [he] trusted that they provided services fully, faithfully, and completely and completed the scope [of the Project]."[106] Foley testified that Common raised no contemporaneous objections to the quality of CFGI's work, he believed the work was beneficial to Common, and Common was pleased with CFGI's services.[107] Common's breach of the Agreement was the result of Common's inability to pay, not the result of CFGI's failure to perform.[108] An inability to pay does not excuse an obligation to pay.

Now Common attempts to about-face, contending CFGI failed to prove its bills reflect work actually performed.[109] Such a contention contradicts the testimony of Foley and Yostos as well as the acknowledgement in the Amendment[110] that the balance alleged to be due was legitimate. The Court credits the testimony of Foley and Yostos as well as the representation in the Amendment rather than Common's present objection to the invoices. The Court therefore awards the total amount owed pursuant to the outstanding invoices, $2,160,033.50.

---

[106] Feb. 14 Tr. 110:20–111:2.

[107] Foley Dep. 31:14-25, 70:21–23. *See also* Feb. 13 Tr. 27:12–17 (J. Thompson testifying that Common did not complain about CFGI's work.). Common also sent contemporaneous emails praising CFGI's work, which are more reliable evidence than testimony and argument raised during litigation. JX 21 at 1 ("CFGI team, I can't express how much I thank you for helping us!!!!"). *Triple H Fam. Ltd. P'ship v. Neal*, 2018 WL 3650242, at *2 (Del. Ch. July 31, 2018) ("[The court] tend[s] to give more weight to the contemporaneous evidence as it is free from the realities of litigation and closer in time to the events that transpired."), *aff'd*, 208 A.3d 703 (Del. 2019).

[108] Foley Dep. 66:23–67:5.

[109] Common Opening Br. at 19.

[110] Again, the Court credits the Amendment not as a separate contract, but rather as contemporaneous evidence of the parties' intent rather than litigation-driven strategy.

17

b. <u>CFGI properly billed for the Sage Intacct project.</u>

Common argues CFGI cannot recover for work on the Sage Intacct project, as the work was inadequate.[111]  To support this theory, Common cites a memo produced by Miles Liscum articulating the state of the project as of August 2022.[112]  Liscum discusses problems within CFGI, but also devotes extensive criticism to Common's failure to set appropriate expectations and properly facilitate the project's success.[113] Liscum did not testify at trial, so the Court cannot asses the context surrounding his memo and judge Liscum's credibility.  The Court therefore gives the Liscum memo little weight.

The memo criticizes both CFGI and Common for the problems with the Sage Intacct project.  Because the memo is unreliable evidence and because Liscum blames both Parties for the problems with the Sage Intacct project, the Court is not persuaded that the blame for the memo's concerns should be wholly allocated to CFGI and reflected by a reduction in CFGI's damages.

Common further contends Liscum's work on the Sage Intacct implementation was inefficient and bills for his work should have been reduced because of his slow pace.[114]  Liscum's slower pace on the Sage Intacct implementation is understandable,

---

[111] Common Opening Br. at 23–25.
[112] *Id.* at 23 (citing JX 112).
[113] JX 112 at 4–5.
[114] Common Opening Br. at 24.

as he was working part-time.[115] The Court is not persuaded that issues with Sage Intacct are the fault of CFGI and that damages should be reduced.

c. CFGI is not liable for the categorization of branding costs error.

Common contends CFGI's damages should be reduced because of an error in the accounting categorization of branding costs.[116] Common contends that CFGI incorrectly categorized branding costs as an intangible asset.[117] As J. Thompson explained, CFGI was not responsible for this error and did not spend time categorizing branding costs—the error was performed by another entity.[118] Although the evidence on this matter is contradictory, Common does not state what amount, if any, should be deducted from the damages calculation due to the "erroneous work."[119] Thus, the Court will not deduct any amount from the damages calculation due to the categorization of branding costs.

d. CFGI performed adequate work on the accounts payable project.

Common complains that CFGI billed for work on the accounts payable project but produced no final product.[120] J. Thompson testified that CFGI did what was requested on the accounts payable project, even if it did not lead to tangible results.[121]

---

[115] Feb. 13 Tr. 178:6–179:1.
[116] Common Opening Br. at 25.
[117] *Id.* at 25.
[118] Feb. 13 Tr. 184:7–185:12.
[119] Common Opening Br. at 25 (describing the issue but not including an amount of alleged overbilling).
[120] *Id.* at 17.
[121] Feb. 13 Tr. 192:13–194:11.

Although CFGI does not discuss this issue in the argument section of its post-trial opening brief, only addressing it in the facts section, the Court is not convinced CFGI should be expected to write off work on the accounts payable project. CFGI is entitled to bill Common for time worked on the accounts payable project even though it was not completed before CFGI ceased work for Common. The Court also notes that Common failed to provide an amount of overbilling for the Accounts Payable project,[122] and is thus not entitled to any offset in damages.

    e. <u>CFGI adequately supervised its employees' billing</u>.

Common argues CFGI should have reviewed the billing practices of each of its employees—independently verifying every employee's every billed hour instead of relying on the employees to self-verify their billing.[123] This proposal poses no modest burden, and the Court finds it neither realistically applicable for professional firms nor adequately supported by Delaware caselaw.[124]

---

[122] Common Opening Br. at 17 (noting the alleged overbilling but not providing an amount).

[123] *Id.* at 19–20

[124] *See Lowe v. Bennett*, 1994 WL 750378, at *3 (Del. Super. Dec. 29, 1994) ("Generally, where an account is rendered, showing a balance due from the one party to another, it is not necessary for the party rendering the account to prove each item of the account.") (citation omitted). The *Lowe* court further held that "[b]ecause [the plaintiff] objected to some of the work performed, he had the burden of showing that this work was not provided in connection with the modified contract." *Id.* at *4. Although Common notes in its Answering Brief (at 8) that the plaintiff in *Lowe* had a duty to mitigate damages, Common has never made such an argument here, and that argument is thus waived. Common also continually ignores the fact that in the Amendment, it acknowledged that the "Outstanding Balance" of $2,156,920 was "due and payable." Am. at 1.

Common contends CFGI failed to properly ensure its remote employees' work matched their billed hours.[125] Martin testified that the remote employees' work product was being reviewed during the Project, ensuring that the employees were working on tasks for Common as CFGI's bills claimed.[126]

The Court is not persuaded that employees of a professional services firm should not be trusted to properly bill their own time, or that said firm should be expected to second guess every billed hour of its professional staff.

f. CFGI's prebilling was acceptable.

Common objects to CFGI's alleged practice of prebilling—logging the time expected to be spent on an assignment before beginning the work.[127] M. Thompson illustrated how the alleged prebilled time was logged before a holiday.[128] M. Thompson further testified that prebilling before a holiday is common practice in the consulting world.[129]

Common contends the prebilled time amounts to $560,000 of the invoices but fails to provide a citation containing evidence to support this amount.[130] Common points to "numerous timekeeping columns" in joint exhibits 128 and 136 to "suggest

---

[125] Common Opening Br. at 25.
[126] Martin Dep. 146:19–23.
[127] Common Opening Br. at 20–21. *See also* Common Answering Br. at 25 (declaring JX 128 and JX 136 show $560,000 in prebilled time but failing to explain how the spreadsheets support that conclusion).
[128] Feb. 14 Tr. 181:5–8.
[129] Feb. 14 Tr. 179:5–17 ("It's my belief -- and this happens all the time in the consulting world.").
[130] Common Opening Br. at 21.

that nearly $560,000 of CFGI's invoiced time was billed prior to the work performed."[131]  This argument fails.  Common provides no calculations nor trial testimony to support how they reached this amount.[132]

The Court also finds M. Thompson's testimony credible, establishing that prebilling is a normal practice in this industry.  At trial, Common did not discredit M. Thompson's testimony, nor present its own affirmative expert testimony on this issue.[133]

Common argues CFGI did not adjust the prebilled time to reflect the time spent on the Project.[134]  Common's argument is predicated on the assumption that the prebilled hours were inaccurate—that the work actually took longer or shorter than expected.  Common does not point to any testimony or evidence in the record that CFGI needed to adjust the prebilled time because it was wrong and failed to do so.  Thus, the Court will not adjust the damages figure for prebilled time.

---

[131] *Id.*

[132] "The Court bears no duty here to spin counsel's straw into gold."  *Maric Healthcare, LLC v. Guerrero*, 2024 WL 2993336, at *9 (Del. Ch. June 14, 2024) (citing *Rudd v. Brown*, 2020 WL 5494526, at *12 (Del. Ch. Sept. 11, 2020)).

[133] Although Common cites the testimony of Martin, who testified that it would be "fair" that "it wouldn't be proper to record time for a client when you hadn't actually -- the date hadn't even occurred," Martin Dep. 150:10–18, this testimony does not support Common's assertion that nearly $560,000 was improperly billed.  Although Martin was CFGI's 30(b)(6) witness, he did not testify at trial and it is difficult for the Court to judge Martin's credibility or put his testimony in context.

[134] Common Opening Br. at 21.

22

The Court is unconvinced prebilling undermines the veracity of CFGI's billable hours or justifies a $560,000 reduction in the bills.

g. CFGI's invoices are sufficiently descriptive.

Common argues CFGI's invoices were vague, failing to identify what the timekeepers were "actually doing."[135] M. Thompson testified that the invoices provided Common were "very consistent with what [he] would have actually created if I had been working on that engagement."[136] Given this credible expert testimony, the Court is not concerned with the description in the invoices, especially as CFGI provided weekly updates describing what work was being performed.[137] Common did not object to the explanations presented in these weekly updates.[138] Common was aware of what CFGI was working on and cannot use the brevity of CFGI's invoice descriptions as a reason to avoid payment.

The Court finds the invoices fairly reflect work actually completed by CFGI.

2. *Common is responsible for expanding the project and must compensate CFGI for its labor.*

Common contends CFGI wrongfully induced Common to expand the scope of the Project, resulting in an unexpected dramatic increase in costs.[139] Common

---

[135] *Id.* at 13.
[136] Feb. 14 Tr. 175:10–12.
[137] JX 207.
[138] *Compare* CFGI Opening Br. at 18–19 (explaining CFGI provided detailed weekly agendas to Common), *with* Common Answering Br. at 15–16 (admitting there were weekly meetings and agenda).
[139] Common Opening Br. at 21–23.

thus attempts to shift the blame for the Project's ballooned scope to CFGI, scapegoating J. Thompson based on her self-described business strategy of "Landing [clients] & Expanding [projects]."[140]   This narrative ignores Yostos' repeated acknowledgment, during his testimony, that he requested an expansion of CFGI's services, knowing that it would necessarily expand the expense for Common.[141] Common's CFO, Foley, also recommended the expanded scope for the Project.[142] Yostos also acknowledged his desire for a swift resolution of the Project, which required more labor and ultimately increased costs.[143]

The Court notes J. Thompson's business strategy, but the evidence shows CFGI expanded the scope of the Project because Common accepted and advocated an expanded scope of work and expedited pace.  Both Yostos and J. Thompson credibly testified that Common wanted CFGI to expand the Project.[144]   Thus, Common must accept responsibility for payment.

---

[140] *Id.* at 22; JX 135 at 8.

[141] Feb. 14 Tr. 71:15–16 ("I'm not disputing that I asked for more work."), 87:4–18 ("Q. So you were well informed with what was happening weekly?  A. Like I said, I'm not disputing that we asked for more work.  I'm not disputing that.  Q. I know, but do you understand my question?  A. Yes.  Q. You understood what was happening weekly regardless of whether you reviewed the agenda or attended the meeting because, as you just testified, you were in direct contact with Ben [Martin] and Dan [Foley]?  A. Yes.  And I asked for more --  Q. -- and you were aware that increasing the scope of the project would cost more money, right?  A. Yes, of course."), 91:20–21 ("And I'm not disputing that I asked for more work.  We did."), 110:20–111:2 ("I want to make it clear.  CFGI, we hired them.  I asked them to do more work.  I'm not disputing that.  They did the work, and I trusted that they provided services fully, faithfully, and completely and completed the scope.  I did, yes, at this time.").

[142] Foley Dep. 33:1–16.

[143] Feb. 13 Tr. 60:3–21; Feb. 14 Tr. 91:20–92:1.

[144] Feb. 13 Tr. 18:11–19:6, 60:3–21; Feb. 14 Tr. 71:15–16, 87:4–18, 91:20–21, 110:20–111:2.

## C. Common's Professional Negligence Claim Fails.[145]

The elements of professional negligence are "(1) the defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury and (4) the plaintiff incurred damages."[146]

Common contends CFGI's work on the Project was negligent, as CFGI "failed to ensure that its client had an understanding as to the nature, extent, timing, and scope of the services to be provided and failed to have its client's best interests in mind."[147]

Common argues CFGI's work on the Agreement was governed by the code of conduct of the American Institute of Certified Public Accountants ("AICPA").[148] Common avers that, because J. Thompson, the controller for the Project, is a CPA, the Project is governed by the full breadth of the AICPA code of conduct.[149] During

---

[145] In addition to the professional negligence claim, Common raises two arguments to defend against CFGI's claimed damages. In its answering brief, Common alleges the same misconduct giving rise to Common's professional negligence claim also supports a breach of contract claim. Common Answering at 12. At oral argument, Common averred CFGI failed to properly mitigate damages. May 5 Tr. 40:10–41:3. Neither argument was properly raised in Common's opening brief, and the court treats each as waived. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993) ("The failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim"); *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived." (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)).

[146] *Fansler v. N. Am. Title Ins. Co.*, 2019 WL 1281432, at *5 (Del. Super. Mar. 19, 2019) (citing *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001)).

[147] Common Opening Br. at 27 (cleaned up).

[148] *Id.* at 28; Common Answering Br. at 22.

[149] Common Opening Br. at 28; Common Answering Br. at 22.

post-trial oral argument, Common conceded CFGI, a consulting firm, is not bound by the AICPA rules.[150]  Common relies on Willoughby's testimony that, if a CPA works on a project, any staff under that CPA are bound by the AICPA.[151]  Willoughby explained how the AICPA rules flow down—not up—CFGI's chain of command: "[the AICPA code of conduct applies] if you're working as a professional accountant and you're working *under* a CPA or *under* the direction of a CPA."[152]

No evidence presented at trial indicates the AICPA code of conduct applies to CFGI by reason of CFGI's CPA employees.  CFGI, not J. Thompson, is party to this lawsuit, and J. Thompson's professional obligations cannot flow up to CFGI to impose liability.[153]

Because the full scope of the AICPA's code of conduct does not apply, CFGI cannot be held liable as professionally negligent for breaching the code of conduct.  Because CFGI held no duty to keep to the code, the Court will not address the remainder of Common's professional negligence argument.

## CONCLUSION

For the reasons stated, the Court finds (1) CFGI proved by a preponderance of the evidence that its entitlement to $2,160,033.50 for Common's breach of the

---

[150] May 5 Tr. 47:20–21.
[151] Feb. 14 Tr. 206:4–10.
[152] *Id.* at 206:6–8 (emphasis added).
[153] *Id.* at 165:14–17 (M. Thompson noting, "That [AICPA] code of conduct is not company related, so if you're not a CPA firm, you're not bound by it.").

Agreement; (2) only Common LP is liable as a party to the Agreement; (3) CFGI's alternative causes of action are dismissed; and (4) Common's claims and defenses fail.

As directed at post-trial argument, the Parties shall either agree on the issue of attorneys' fees and interests or brief the remaining issues on such. If there are any open issues not addressed or mooted by this post-trial opinion, the Parties shall notify the Court by letter within five days. If the Parties cannot agree on attorneys' fees, costs, and interest, they shall submit a briefing schedule for the issues with their letter to the Court.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**